**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| MSP RECOVERY CLAIMS, SERIES LLC, | ) | |
| a Delaware entity; SERIES 15-09-157, a | ) | |
| designated series of MSP Recovery Claims, | ) | |
| Series LLC; SERIES 16-11-509, a series of | ) | |
| MSP Recovery Claims, Series LLC; and | ) | |
| MSPA CLAIMS 1, LLC, Florida entity, | ) | Case No. |
| | ) | |
| Plaintiffs, | ) | Judge |
| | ) | |
| v. | ) | |
| | ) | CLASS ACTION COMPLAINT |
| PROGRESSIVE CORPORATION, an Ohio | ) | WITH JURY DEMAND |
| corporation, including its direct and indirect | ) | |
| subsidiaries and affiliates, PROGRESSIVE | ) | |
| GROUP OF INSURANCE COMPANIES, | ) | |
| PROGRESSIVE AMERICAN | ) | |
| INSURANCE COMPANY, PROGRESSIVE | ) | |
| SELECT INSURANCE COMPANY, | ) | |
| PROGRESSIVE DIRECT HOLDINGS, | ) | |
| INC., PROGRESSIVE CASUALTY INSURANCE | ) | |
| COMPANY, PROGRESSIVE | ) | |
| CLASSIC INSURANCE, PROGRESSIVE | ) | |
| NORTHWESTERN, PROGRESSIVE | ) | |
| INSURANCE COMPANY, AND | ) | |
| PROGRESSIVE CLAIMS MANAGEMENT, | ) | |

Defendants.

**PLAINTIFFS' CLASS ACTION
COMPLAINT FOR DAMAGES**

Plaintiffs, MSP Recovery Claims, Series LLC, a Delaware entity, Series 15-09-157, a

designated series of MSP Recovery Claims Series LLC, Series 16-11-509, a series of MSP

Recovery Claims, Series LLC, and MSPA Claims 1, LLC, a Florida entity (collectively,

"Plaintiffs"), on behalf of themselves and all others similarly situated, bring this action against the

Progressive Corporation, including its insurance subsidiaries and affiliates Progressive Group of

Insurance Companies, Progressive Insurance Company, Progressive American Insurance Company, Progressive Select Insurance Company, Progressive Direct Holdings, Inc., Progressive Casualty Insurance Company, Progressive Classic Insurance, Progressive Northwestern, and Progressive Claims Management, ("Progressive" or "Defendants"), and state as follows:

## NATURE OF THE ACTION

1.  This is a class action lawsuit under 42 U.S.C. § 1395y, otherwise known as the Medicare Secondary Payer ("MSP") Act, arising from Defendants' systematic and uniform failure to reimburse conditional Medicare payments.

2.  Defendants have failed to fulfill their statutory duties under the MSP Act as a "no-fault" insurer. Specifically, Defendants have repeatedly failed to provide primary payment, or reimburse secondary payments made by Plaintiffs' assignors and Class Members, on behalf of Medicare beneficiaries enrolled in Part C of the Medicare Act (the "Enrollees") for medical expenses resulting from injuries sustained in automobile accidents (the "accident-related medical expenses"). The Enrollees were enrolled in Medicare Advantage health plans offered and/or administered by Plaintiffs' assignors and Class Members, i.e., MA entities such as Medicare Advantage Organizations ("MAOs"), Independent Practice Associations ("IPAs"), Management Service Organizations ("MSOs"), Health Maintenance Organizations ("HMOs"), and other Medicare downstream entities and their assignees (hereinafter collectively referred to as "MA Entities"), which suffered an injury-in-fact from Defendants' failure to reimburse, and accordingly, have standing to sue under 42 U.S.C. § 1395y(b)(3)(A).

3.  Plaintiffs' assignors and the putative Class Members are MA Entities that provided Medicare benefits to the Enrollees. These Enrollees suffered injuries related to an accident and

Plaintiffs' assignors and the putative Class Members paid for and/or were not properly reimbursed for medical items and/or services required by the Enrollees as a result of the accident. Because the Plaintiffs' assignors' and Class Members' Enrollees were also covered by no-fault automobile policies issued by the Defendants, Defendants are primary payers under the MSP Act and must reimburse Plaintiffs and the putative Class Members for their payment and/or lack of proper reimbursement of accident-related medical expenses.

4.     Congress provided a private right of action to any private entity or individual to enforce the MSP Act and remedy a primary payer's failure to reimburse conditional payments made by original Medicare or an MAO.  As described in detail below, Plaintiffs' assignors and the Class Members have each suffered an injury in fact as a result of Defendants' failure to meet their statutory payment and reimbursement obligations.

5.     On behalf of themselves and the Class, Plaintiffs seek, *inter alia*, double damages under the MSP Act for Defendants' failure to properly reimburse conditional payments for Enrollees' accident-related medical expenses within the applicable limitations period. This lawsuit, like others, advances the interests of the MSP Act and Medicare, because when MA Entities recover conditional payments they "spend less on providing coverage for their enrollees" and the "Medicare Trust Fund . . . achieve[s] cost savings." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 685 F.3d 353, 365 (3d Cir. 2012).

## PLAINTIFFS' EXEMPLAR CLAIMS
## RELATING TO MEDICARE PART C BENEFICIARIES

6.  Plaintiffs file this case as the class representatives of a class that consists of MA Entities and their assignees. Accordingly, Plaintiffs set forth below specific examples of

Defendants' systematic and uniform failure to fulfill their statutory duties as "no-fault" insurers. In these examples, Plaintiffs describe Defendants' failure to reimburse conditional payments and how that failure caused injury in fact to the exemplar MA Entities, which subsequently assigned their recovery rights to Plaintiffs.

<u>**MSPA CLAIMS 1'S L.B. AND J.R. EXEMPLAR CLAIMS**</u>

7.      On June 3, 2013, L.B. was enrolled in a Medicare Advantage plan issued and administered by Florida Healthcare Plus ("FHCP").   FHCP is an MAO.

8.      On June 3, 2013, L.B. was injured in an accident in Florida.  At the time of the accident, L.B. was also insured under a no-fault policy issued by Defendants.  As a direct result of the accident, LB. sustained injuries which include but are not limited to the following:

    i.  V72.84            Pre-operative examination, unspecified

    ii.  722.0             Displacement of cervical intervertebral disc without myelopathy

    iii.  723.1             Cervicalgia

    iv.  E929.0           Late effects of motor vehicle accident

    v.  496               Chronic airway obstruction, not elsewhere classified

9.      A list of the diagnosis codes and injuries assigned to L.B. in connection with L.B.'s accident-related treatment is attached hereto as **Exhibit A**.

10.     As a direct and proximate result of the accident and the injuries detailed above, L.B. required medical items and services.  Those medical items and services include but are not limited to:

    i.  99283            Emergency dept. visit [A]

    ii.   72040          X-ray exam neck spine 2-3 vw [A]

    iii.   73221          MRI joint upr extrem w/o dye [A]

    iv.   72141          MRI neck spine w/o dye [A]

    v.   20610          Drain/inj joint/bursa w/o us [A]

    vi.   76140          X-ray consultation [I]

    vii.   72050          X-ray exam neck spine 4/5 vws [A]

    viii.   71020          Chest x-ray 2vw frontal & latl [A]

    ix.   00600          Anesth Spine cord surgery [J]

    x.   L0172          Cervical, collar, semi-rigid thermoplastic foam, two-piece, prefabricated, off-the-shelf

    xi.   88304          Tissue exam by pathologist [A]

    xii.   22551          Neck spine fuse & remov bel c2 [A]

    xiii.   63075          Neck spine disk surgery [A]

    xiv.   22845          Insert spine fixation device [A]

    xv.   22851          Apply spine prosth device [A]

    xvi.   20930          Sp bone algrft morsel add-on [B]

    xvii.   99222          Initial hospital care [A]

An account of the items and services provided to L.B. as a result of the accident are included within **Exhibit A**.

11.    The medical providers subsequently issued a bill for payment of the accident-related medical expenses to L.B.'s MA Entity, FHCP, which was fully responsible for all medical expenses incurred by L.B.  FHCP paid $ 19,316.20 for L.B.'s accident-related medical expenses.

While Plaintiffs allege the amount paid solely for purposes of completeness, the medical provider actually billed and charged FHCP $ 90,649.04. for L.B.'s accident-related medical expenses. The amount of damages recoverable under an MSP Act claim is what an MAO was charged, not what it ultimately paid. *See* 42 C.F.R. § 411.31. Accordingly, Plaintiff, MSPA Claims 1, seeks double the amount of $ 90,649.04 as damages for this particular exemplar claim.

12.     Defendants are liable for this amount because they were L.B.'s primary payer by virtue of a no-fault insurance policy that they issued to L.B. In fact, Defendants reported and admitted to the Centers for Medicare & Medicaid Services ("CMS") that they were the primary payer for L.B.[1] Further, Defendants even reported information regarding the accident, the name of the reporting entity, and the type of insurance policy involved. This reporting demonstrates that Defendants were aware of the accident and its responsibility to reimburse FHCP.  A true and correct copy of Defendants' report to CMS is attached hereto as **Exhibit C**.[2]  Despite Defendants' reporting that they were a primary payer, and the corresponding admission that they should have paid for L.B.'s accident-related injuries, Defendants failed to do so, giving rise to a claim under the MSP Act.

13.     On October 2, 2014, J.R. was enrolled in a Medicare Advantage plan administered

---

[1] Plaintiffs have identified at least 2000 instances where Defendants admitted they were to provide primary payment on behalf of Enrollees.  A list of such instances is attached hereto as **Exhibit B**.

[2] Plaintiffs obtained this reporting data from a vendor called MyAbility. MyAbility is one of 16 CMS-authorized vendors that allow companies to access data that primary payers report to CMS, in compliance with their statutory reporting obligations. To be clear, the reporting data attached to this Complaint is taken directly from the data that CMS stores, which is inputted by the Defendants, not the Plaintiffs. Accordingly, any inaccuracies or lack of specificity in the reporting data would be attributable to the manner in which Defendants chose to report.

by Interamerican Medical Center Group, LLC ("IMC"). IMC is an MAO downstream entity. As IMC is a downstream entity providing Medicare benefit coverage, pursuant to regulation, IMC is entitled to reimbursement for conditional payments made where a primary payer is available.

14.     On October 2, 2014, J.R. was injured in an accident in Florida.  At the time of the accident, J.R. was also insured under a no-fault policy issued by Defendants.  As a direct result of the accident, J.R. sustained injuries which include but are not limited to the following:

    i.  959.01          Head injury, unspecified

    ii.  719.46          Pain in joint, lower leg

    iii.  338.11          Acute pain due to trauma, etc.

15.     A list of the diagnosis codes and injuries assigned to J.R. in connection with J.R.'s accident-related treatment is attached hereto as **Exhibit D**.

16.     As a direct and proximate result of the accident and the injuries detailed above, J.R. required medical items and services.  Those medical items and services include but are not limited to:

    i.  70450          CT head/brain w/o dye [A]

    ii.  73562          X-ray exam of knee 3 [A]

    iii.  20611          Drain/inj joint/bursa w/us [A]

    iv.  71020          Chest x-ray 2vw frontal & latl [A], etc.

An account of the items and services provided to J.R. as a result of the accident are included within **Exhibit D**.

17.     The medical providers subsequently issued a bill for payment of the accident-related medical expenses to J.R.'s Medicare coverage provider, IMC, which was fully responsible

for all medical expenses incurred by J.R. IMC paid $ 3,674.13 for J.R.'s accident-related medical expenses. While Plaintiff, MSPA Claims 1, alleges the amount paid solely for purposes of completeness, the medical provider actually billed and charged IMC $44,925.88 for J.R.'s accident-related medical expenses. The amount of damages recoverable under an MSP Act claim is what an MAO was charged, not what it ultimately paid. *See* 42 C.F.R. § 411.31. Accordingly, Plaintiff, MSPA Claims 1, seeks double the amount of $ 44,925.88. as damages for this particular exemplar claim.

18. Defendants are liable to pay this amount because they were J.R.'s primary payer by virtue of a no-fault insurance policy that they issued to J.R. In fact, Defendants reported and admitted to CMS that it was the primary payer for J.R. Further, Defendants even reported information regarding the accident, the name of the reporting entity, and the type of insurance policy involved. This reporting demonstrates that Defendants were aware of the accident and its responsibility to reimburse IMC. A true and correct copy of Defendants' report to CMS is attached hereto as **Exhibit E**.[3] Despite Defendants' reporting that they were a primary payer, and the corresponding admission that they should have paid for J.R.'s accident-related injuries, Defendants failed to do so, giving rise to a claim under the MSP Act.

## MSP RECOVERY CLAIMS, SERIES LLC'S T.M. AND C.P. EXEMPLAR CLAIMS

19. On March 7, 2017, T.M. was enrolled in a Medicare Advantage plan issued and

---

[3] Plaintiffs obtained this reporting data from a vendor called MyAbility. MyAbility is one of 16 CMS-authorized vendors that allow companies, such as Plaintiffs, to access data that primary payers report to CMS, in compliance with their statutory reporting obligations. To be clear, the reporting data attached to this Complaint is taken directly from the data that CMS stores, which is inputted by the Defendants, not the Plaintiffs. Accordingly, any inaccuracies or lack of specificity in the reporting data would be attributable to the manner in which Defendants chose to report.

administered by ConnectiCare, Inc ("CONC").  CONC is an MAO.

20.    On March 7, 2017, T.M. was injured in an accident in Connecticut.  At the time of
the accident, T.M. was also insured under a no-fault policy issued by Defendants.

21.    As a direct and proximate result of the accident and the injuries detailed above,
T.M.  required medical items and services.  Those medical items and services include but are not
limited to:

|       |       |                                    |
|-------|-------|------------------------------------|
| i.    | 72125 | CT neck spine w/o dye [A]           |
| ii.   | 70450 | CT head/brain w/o dye [A]           |
| iii.  | 71020 | Chest x-ray 2vw frontal & latl [A]  |
| iv.   | 99284 | Emergency Dept. Visit [A]           |
| v.    | 99214 | Office/outpatient visit est [A]     |
| vi.   | 64493 | Inj paravert f jnt l/s 1 lev [A]    |
| vii.  | 64494 | Inj paravert f jnt l/s 2 lev [A]    |
| viii. | 64495 | Inj paravert f jnt l/s 3 lev [A]    |
| ix.   | J1030 | Methylprednisolone 40 mg inj [E]    |
| x.    | J3490 | Drugs unclassified injection [E]    |

An account of the items and services provided to T.M. as a result of the accident are included
within **Exhibit F**.

22.    The medical providers subsequently issued a bill for payment of the accident-
related medical expenses to T.M.'s MAO, CONC, which was fully responsible for all medical
expenses incurred by T.M.  CONC paid $ 2,845.39 for T.M.'s accident-related medical expenses.
While Plaintiff alleges the amount paid solely for purposes of completeness, the medical provider

actually billed and charged $23,050.00. for T.M.'s accident-related medical expenses. The amount of damages recoverable under an MSP Act claim is what an MAO was charged, not what it ultimately paid. *See* 42 C.F.R. § 411.31. Accordingly, Plaintiff, MSP Recovery Claims, Series LLC, seeks double the amount of $23,050.00 as damages for this particular exemplar claim.

23.     Defendants are liable to pay this amount because they were T.M.'s primary payer by virtue of a no-fault insurance policy that they issued to T.M. In fact, Defendants reported and admitted to CMS that they were the primary payer for T.M. Further, Defendants even reported information regarding the accident, the name of the reporting entity, and the type of insurance policy involved. This reporting demonstrates that Defendants were aware of the accident and its responsibility to reimburse CONC.  A true and correct copy of Defendants' report to CMS is attached hereto as **Exhibit G**.[4]  Despite Defendants' reporting that they were a primary payer, and the corresponding admission that they should have paid for T.M.'s accident-related injuries, Defendants failed to do so, giving rise to a claim under the MSP Act.

24.     On September 23, 2015, C.P. was enrolled in a Medicare Advantage plan issued and administered by Summacare, Inc.  ("SMCR"). SMCR is an MAO.

25.     On September 23, 2015, C.P. was injured in an accident in Ohio.  At the time of the accident, C.P. was also insured under a no-fault policy issued by Defendants.  As a direct result of the accident, C.P. sustained injuries which include but are not limited to the following:

---

[4] Plaintiffs obtained this reporting data from a vendor called MyAbility. MyAbility is one of 16 CMS-authorized vendors that allow companies, such as Plaintiffs, to access data that primary payers report to CMS, in compliance with their statutory reporting obligations. To be clear, the reporting data attached to this Complaint is taken directly from the data that CMS stores, which is inputted by the Defendants, not the Plaintiffs. Accordingly, any inaccuracies or lack of specificity in the reporting data would be attributable to the manner in which Defendants chose to report.

    i.   723.1           Cervicalgia

    ii.   E819.0        Motor vehicle traffic accident of unspecified nature injuring driver of motor vehicle other than motorcycle

    iii.   272.4           Other and unspecified hyperlipidemia

    iv.   401.9           Unspecified essential hypertension

    v.   784.0           Headache

    vi.   719.45        Pain in joint, pelvic region and thigh

    vii.   719.06        Effusion of joint, lower leg

    viii.   V43.65        Knee joint replacement

    ix.   M70.62        Trochanteric bursitis, left hip

    x.   M76.822      Posterior tibial tendinitis, left leg

26.     A list of the diagnosis codes and injuries assigned to C.P. in connection with C.P.'s accident-related treatment is attached hereto as **Exhibit H**.

27.     As a direct and proximate result of the accident and the injuries detailed above, C.P. required medical items and services.  Those medical items and services include but are not limited to:

    i.   G8784        Pt no elig for bp assess [M]

    ii.   99284        Emergency dept visit [A]

    iii.   70450        Ct head/brain w/o dye [A]

    iv.   72125        Ct neck spine w/o dye [A]

    v.   73564        X-ray exam knee 4 or more [A]

    vi.   73510        X-ray exam of hip [A]

      vii.   20610         Drain/inj joint/bursa w/o us [A]

      viii.  73610         X-ray exam of ankle [A]

An account of the items and services provided to C.P. as a result of the accident are included within **Exhibit H**.

28.     The medical providers subsequently issued a bill for payment of the accident-related medical expenses to C.P.'s MAO, SMCR, which was fully responsible for all medical expenses incurred by C.P.  SMCR paid $365.27 for C.P.'s accident-related medical expenses. While Plaintiff, MSP Recovery Claims, Series LLC,  alleges the amount paid solely for purposes of completeness, the medical provider actually billed and charged SMCR $7,897.75 for C.P.'s accident-related medical expenses. The amount of damages recoverable under an MSP Act claim is what an MAO was charged, not what it ultimately paid. *See* 42 C.F.R. § 411.31. Accordingly, Plaintiff, MSP Recovery Claims, Series LLC, seeks double the amount of $ 7,897.75 as damages for this particular exemplar claim.

29.     Defendants are liable to pay this amount because they were C.P.'s primary payer by virtue of a no-fault insurance policy that they issued to C.P. In fact, Defendants reported and admitted to CMS that it was the primary payer for C.P. Further, Defendants even reported information regarding the accident, the name of the reporting entity, and the type of insurance policy involved. This reporting demonstrates that Defendants were aware of the accident and its responsibility to reimburse SMCR.  A true and correct copy of Defendants' report to CMS is attached hereto as **Exhibit I**.[5]  Despite Defendants' reporting that they were a primary payer, and

---

[5] Plaintiffs obtained this reporting data from a vendor called MyAbility. MyAbility is one of 16 CMS-authorized vendors that allow companies, such as Plaintiffs, to access data that primary

the corresponding admission that they should have paid for J.R.'s accident-related injuries, Defendants failed to do so, giving rise to a claim under the MSP Act.

## ALLEGATIONS RELATING TO ALL CLAIMS

30.     Plaintiffs have the legal right to pursue this MSP Act claim pursuant to a series of valid assignment agreements.[6]

31.     Based on Defendants reporting to CMS (*see* **Exhibit B**), Plaintiffs have attempted in good faith to identify all relevant Progressive subsidiaries. However, Plaintiffs reserve the right to pursue reimbursement for medical expenses against any of Defendants' affiliates or subsidiaries should one of these be the true primary payer.  The subsidiaries of Defendants identified from Defendants' reporting to CMS are:

      a.  Progressive Corporation;

      b.  Progressive Group of Insurance Companies;

      c.  Progressive Insurance Company;

      d.  Progressive American Insurance Company;

      e.  Progressive Select Insurance Company;

      f.  Progressive Direct Holdings, Inc.;

      g.  Progressive Casualty Insurance Company;

      h.  Progressive Classic Insurance;

---

payers report to CMS, in compliance with their statutory reporting obligations. To be clear, the reporting data attached to this Complaint is taken directly from the data that CMS stores, which is inputted by the Defendants, not the Plaintiffs. Accordingly, any inaccuracies or lack of specificity in the reporting data would be attributable to the manner in which Defendants chose to report.

[6] The applicable assignment agreement languages can be found in Exhibits J-S, attached.

      i.    Progressive Northwestern; and

      j.    Progressive Claims Management.

32.    Accordingly, Plaintiff, MSPA Claims 1, is entitled to collect double damages against Defendants for their failure to reimburse its assignors conditional payments, including the exemplar claim where FHCP and IMC made conditional payments for L.B. and J.R.'s accident-related expenses.

33.    Plaintiff, MSP Recovery Claims, Series, and its corresponding designated series, is entitled to collect double damages against Defendants for their failure to reimburse CONC and SMCR's conditional payments for T.M. and C.P.'s accident-related expenses

34.    Full details regarding the foregoing claims, i.e., specific payments, coverage determinations, etc., are immaterial to pleading an MSP Act claim but, in any event, are in Defendants' possession and will be located and assessed through the process of discovery. However, the allegations set forth herein plainly demonstrate that Plaintiffs' assignors suffered damages as a direct result of Defendants' individual failures to reimburse conditional payments as required under the MSP Act.

35.    In addition, Section 1395y(a)(1)(A) of the Medicare statute states that, "no payment may be made under [the Medicare statute] for any expenses incurred for items or services which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury."

36.    Because this Section contains an express condition of payment – that is, "no payment may be made" – it explicitly links each Medicare payment to the requirement that the particular item or service be "reasonable and necessary."

37.    Once an MAO makes a payment for medical items and services on behalf of its

Enrollees, the payment is conclusive proof that the items and services were reasonable and necessary.

38.     The items and services received by and paid on behalf of the Enrollees, including the exemplar claims listed herein were reasonable and necessary.

39.     All purported conditions precedent to the filing of this lawsuit have occurred, been performed, or have been otherwise waived by Defendants.

40.     Pursuant to Plaintiff, MSP Recovery Claims, Series LLC's, limited liability agreement and Delaware law, all rights arising from the assignment to its series, along with the right to bring any lawsuit in connection with said assignment, belongs to Plaintiff. Therefore, Plaintiff, MSP Recovery Claims, Series LLC, and its designated series, may pursue CONC and SMCR's rights to recover reimbursement of Medicare payments that should have been paid, in the first instance, by Defendants.

## JURISDICTION AND VENUE

41.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question).

42.     Venue is proper under 28 U.S.C. § 1391 in the United States District Court for the Southern District of Florida because it is the district in which the cause of action accrued.

43.     This Court has personal jurisdiction over Defendants as Defendants are authorized and licensed to conduct business in Ohio, maintain and carry on systematic and continuous contacts in this judicial district, regularly transact business within this judicial district, and regularly avail themselves of the benefits in this judicial district.

44.     All conditions precedent to this action have occurred, been performed, or have been

waived, including meeting any purported threshold amount to the applicable.

## BACKGROUND

45.     The MSP Act declares that Medicare or MAOs are "secondary payers" to all other sources of coverage, and, consequently, MAOs that are injured as a result are empowered to recoup from the rightful primary payer if Medicare or an MAO pays for a service that fell within overlapping insurance coverage for a Medicare Part C beneficiary.

46.     Defendants  are primary plans under § 1395y(b)(2)(A) because they are no-fault insurers. *See* 42 U.S.C. § 1395y(b)(2)(A) (defining "primary plan" to include a group health plan or large group health plan…a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no-fault insurance); 42 C.F.R. § 411.21 (same).

## I.     Medicare Advantage

47.     The Medicare Advantage program, otherwise known as Part C, was enacted in 1997.  Under the Medicare Advantage program, a private insurance company, operating as an MAO, administers the provision of Medicare benefits pursuant to a contract with CMS.

48.     CMS pays the MAO a fixed fee per Enrollee and the MAO provides, at minimum, the same benefits an Enrollee would receive under traditional Medicare.  MAOs are a private sector analog to traditional Medicare and have the same rights to reimbursement from primary payers, like the Defendant here.

## II.     The Medicare Payment Process

49.     An MAO must process and pay or deny claims promptly to comply with the specific requirements established by federal law, federal regulations, and the terms of the its contract with

CMS. Federal law requires Medicare and MAOs to pay within 30 days, 42 C.F.R. § 422.520(a), for only those medical expenses that are reasonable and necessary. 42 U.S.C. § 1395y(a)(1)(A).

50.     In addition to MAOs, first-tier and downstream entities suffer damages (and thus an injury-in-fact) when a primary plan fails to make a payment or reimburse pursuant to the MSP Acts.

51.     First-tier and downstream entities include MSOs and other at-risk providers, all of whom have standing to bring suit under 42 U.S.C. § 1395y(b)(3)(A).

52.     To that point, MSOs often enter into a written arrangement—acceptable to CMS— with an MAO to provide health care services for Medicare beneficiaries enrolled under the MAO's Medicare Advantage plan. Just as CMS provides the MAO with a fixed fee per enrollee, typically the MAO agrees to provide the MSO with a fixed fee per beneficiary assigned to that MSO.

53.     Under these arrangements, the MSO is usually fully at risk, that is to say that it is responsible for all medical care and services required by the Medicare beneficiary.[7] To meet its obligations, an MSO can either provide medical services directly to enrollees (i.e., through its own medical centers) or by otherwise paying providers for items and services provided to enrollees.

54.     Any time a Medicare beneficiary assigned to an MSO receives medical treatment, the MSO pays for that treatment. If those treatments are covered by an overlapping no-fault insurance policy and the no-fault insurer reimburses the medical expenses incurred, that

---

[7] For example, in a full-risk agreement, Medicare Payers receive a capitated fee for the care of a patient per month. If the costs for the provision of care of that patient fall below the capitated fee, then the Medicare Payer keeps the difference between the capitated rate and what was actually paid out. If the costs of care exceed the capitated fee, then the at-risk Medicare Payer is fully responsible. That is why they are called "at-risk", because they suffer an actual injury in fact when they pay more for patient care than what they receive in the capitated fee.

reimbursement directly remedies the MSO's injury.

55.   The same is true for Independent Physician Associations ("IPAs"). IPAs typically enter into contractual arrangements with MAOs or MSOs. Under these arrangements, IPAs take on the full risk for a Medicare beneficiary's medical care. Any time a Medicare beneficiary assigned to an IPA receives medical treatment, the IPA pays for that treatment. If a no-fault insurer has primary payer responsibility and reimburses medical expenses paid by the IPA, that reimbursement directly remedies the IPA's injury.

## III.   CMS' Standard for Storing Digital Health Insurance Claims Data

56.   It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format.  According to the U.S. Department of Health and Human Services (HHS), CMS, federal statutes, and industry best practices and guidelines, the standard format for storing digital health insurance claims data is an electronic data interchange ("EDI") format called 837P ("837").[8]

a.   The 837 standard is mandated by the Federal government and used by federal and state payors such as Medicare and Medicaid.

b.   The 837 standard is also used by private insurers, hospital clinics, physicians and other health care providers (i.e., HIPAA covered entities) who typically adopt CMS standards.

c.   Paper claims are captured in the CMS 1500, UB04, and UB92 forms, but

---

[8] Department of Health and Human Services, Centers for Medicare and Medicaid. Medicare Billing: 837P and Form CMS 1500 (2016), https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/837P-CMS-1500.pdf.

electronically, the standard for storing data is the 837 format.

57.    Essential components of an 837-claim file include but are not limited to the date(s) of service, diagnosis code(s) and medical procedure code(s).

    a.   <u>Dates (including dates of service)</u>: the standard format for dates in electronic health care claims is YYYYMMDD, CCYYMMDD, or MM/DD/YYYY.

        i.   According to industry best practices and guidelines, and to HHS and CMS, the standard format for expressing dates in healthcare insurance claims data is CCYYMMDD (CC representing two numeric digits to indicate Century, YY representing two numeric digits for year, MM representing two-digits for the month, DD representing two digits for the day of the month). Sometimes this is alternately expressed as YYYYMMDD.[9]

        ii.   The CCYYMMDD date format standard has been in place for many years.

---

[9] *See* the Medicare Claims Processing Manual Chapter 3 and CMS Manual System, Pub 100-08 Medicare Program Integrity, Transmittal 721.

*See* CMS Guidance for 2010[10], 2011[11], 2012[12],  2013[13],  2014[14], and 2016.[15]

   iii. CMS has also accepted the MM/DD/YYYY format for its local coverage determination data.  *See* Local Coverage Determination ("LCD") Date of Service Criteria.[16]

   iv. The purpose of the date format is to ensure that dates of health care claims

---

[10] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 761 dated August 20, 2010, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/r761otn.pdf.

[11] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 988 dated October 28, 2011, Business Requirements Table II, 7602.1 – Requirement, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R988OTN.pdf.

[12] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 1050 dated February 29, 2012, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R1050OTN-.pdf.

[13] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 1277 Medicare Physician Fee Schedule, dated August 9, 2013, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R1277OTN.pdf.

[14] CMS Medicare Part D 2014 Guidance dated March 10, 2014, https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/Hospice/Downloads/Part-D-Payment-Hospice-Final-2014-Guidance.pdf.

[15] Medicare Plan Payment Group Enterprise Systems Solutions Group Software Release Announcement, https://www.cms.gov/Research-Statistics-Data-and-Systems/CMS-Information-Technology/mapdhelpdesk/Downloads/Announcement-of-the-February-2017-Software-Release.pdf.

[16] CMS.gov.  Local Coverage Determination (LCD) Date of Service Criteria. https://www.cms.gov/medicare-coverage-database/search/lcd-date-search.aspx?DocID=L35093&bc=gAAAAAAAAAAAA.

such as the date a medical procedure was provided (date of service or "DOS") in comparison to the date of settlement, can be searched, sorted and properly selected as compensable or non-compensable claims.

v.  In general, ensuring the accuracy of dates, and other data is essential to performing analysis on claims data files by health insurers, and others who may need to determine the value of claims, the relevance of particular claims with respect to patient conditions, dates of care, or whether the claim is compensable.

b.  <u>Medical Diagnosis and Procedure Codes</u>:

i.  Diagnosis-Related Group (DRG) – DRGs are a statistical system of classifying any inpatient stay into groups for the purposes of payment. The DRG classification system divides possible diagnoses into more than 20 major body systems and subdivides them into almost 500 groups for the purpose of Medicare reimbursement. Factors used to determine the DRG payment amount include the diagnosis involved as well as the hospital resources necessary to treat the condition.[17][18]

---

[17] Gillian I. Russell, Terminology, in FUNDAMENTALS OF HEALTH LAW 1, 12 (American Health Lawyers Association 5th ed., 2011).

[18] Beginning in 2007, CMS overhauled the DRG system with the development of "severity-adjusted DRGs." Specifically, beginning in October 2007, CMS began to replace DRGs with "Medicare-severity DRGs" or "MS-DRGs" through a three-year phase-in period that blended payment under the old DRG system and the MS-DRG system.  In a small number of MS-DRGs, classification is also based on the age, sex, and discharge status of the patient. The diagnosis and discharge information is reported by the hospital using codes from the ICD-9-CM or ICD-10 CM if the date of services is on or after October 1, 2015.

ii. International Classification of Diseases (ICD-9 and ICD-10) The diagnosis information is reported by the hospital using codes from the ICD-9-CM (the International Classification of Diseases, 9th Edition, Clinical Modification if the date of services is before October 1, 2015), or ICD-10 CM if the date of services is on or after October 1, 2015

iii. Inpatient medical procedures ICD-9 Volume 2 and volume 3 and ICD-10 PCS. These codes are used to describe inpatient medical procedures, excluding the physician's bill.

iv. Current Procedural Terminology ("CPT") - CPT[19] codes are a standardized listing of descriptive terms and identifying codes for reporting outpatient medical services and procedures as well as both inpatient and outpatient physician services. The current version, CPT-4 is maintained by the American Medical Association and is an accepted standard by the National Committee on Vital Statistics or NCVHS.[20]

v. Ambulatory Patient Classification (APC) - Services performed in outpatient ambulatory surgery centers may be classified by APCs. CMS assigns

---

[19] CPT codes and descriptions are copyrights f the American Medical Association Current Procedural Terminology.

[20] National Committee on Vital and Health Statistics, Consolidated Health Informatics Initiative, http://www.ncvhs.hhs.gov/meeting-calendar/agenda-of-the-december-9-10-2003-ncvhs-subcommittee-on-standards-and-security-hearing/consolidated-health-informatics-initiative-final-recommendation-information-sheet-billingfinancial-for-the-december-9-2003-ncvhs-subcommittee-on-standards-and-security-hearing/.

individual services to APCs based on similar clinical characteristics and similar costs.[21]

vi. Healthcare Common Procedure Coding System (HCPCS) - HCPCS is mainly used to indicate medical supplies, durable medical goods, ambulance services, and durable medical equipment, prosthetics, orthotics and supplies (DMEPOS).[22]

vii. The standard Code set for medical diagnosis and procedure codes in health care claims is a series of digits as specified in 45 C.F.R. 162.1002 - Medical data code sets.

viii. The purpose of standard diagnosis code sets is to use a universal terminology in describing patients with certain conditions to determine compensable or non-compensable claims.

ix. Specifically, CMS primarily utilizes two systems of classification: (1) the International Classification of Diseases ("ICD-9") medical diagnosis codes; and (2) Current Procedural Terminology ("CPT-4") procedure codes. *See* 45 C.F.R. 162.1002.

**IV. Plaintiffs' Use of EDI to Analyze Claims Data and Identify Reimbursement Claims**

---

[21] CMS, Hospital Outpatient Prospective Payment System, Partial Hospitalization services furnished by hospitals or Community Mental Health Centers, Ambulatory Payment System, https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/HospitalOutpaysysfctsht.pdf.

[22] American Academy of Professional Coders (AAPC), https://www.aapc.com/resources/medical-coding/hcpcs.aspx.

**Under the MSP Act.**

58. Using a software system (the "MSP System"), designed and developed by Plaintiffs, Plaintiffs can capture, compile, synthesize, and funnel large amounts of data to identify claims class-wide. The MSP System captures data from different sources to identify the Class Member enrollees' medical expenses incurred as a result of an automobile accident and which should have been paid for by Defendant. The System can also identify the amounts owed, by using the Defendants' EDI, the MAO's data, and data acquired from outside sources, like the Department of Motor Vehicles, and CMS.

59. Plaintiffs merge Defendants' data with the information available on the MSP System to discover and identify a Medicare eligible person for whom primary medical payments should have been made, along with any information stored as to potential class members.

60. The MSP System utilizes ICD-9 or ICD-10 CM medical diagnosis codes and DRGs, ICD-9, ICD-10 PCS, HCPCS, or CPT procedure codes to identify and obtain any information regarding an Enrollee's claim, such as the type of injury suffered, the circumstances that caused the injury, whether the listed primary insurance provider made payment, and whether the insurance carrier was a no-fault provider.

## THE PARTIES

61. Plaintiff, MSP Recovery Claims, Series LLC, is a Delaware series limited liability company with a principal place of business located at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155. Plaintiff has established various specific Series wherein each specific Series is owned exclusively by MSP Recovery Claims, Series LLC. The specific Series have been designated with specific characteristics to identify the specific assignors assigning to Plaintiff. All

specific Series form a part of Plaintiff and are owned by Plaintiff. Plaintiff's limited liability company agreement provides for the establishment of one or more specific Series. The records maintained for such Series account for the assets associated with such specific Series. All records of all Series are maintained together with all assets of the limited liability company. The limited liability company agreement provides that there are no limitations on liabilities of any Series. Pursuant to its limited liability agreement and applicable amendment(s), Plaintiff owns and controls any and all Series interests and all claims rights transferred from any assignor and may allocate any assets, including assignments, to a Series. Plaintiff's limited liability agreement provides that any rights and benefits arising from assignments to its series shall belong to Plaintiff.

62.     Numerous assignors have assigned their recovery rights to assert the causes of action alleged in this Complaint to series LLCs of the Plaintiff, and Plaintiff maintains the legal right to sue on behalf of each of its designated series LLCs.  As such, Plaintiff has the right and authority to seek reimbursement of Medicare payments made by its assignors, which should have been paid, in the first instance, by Defendants.

63.     Series 15-09-157 is a designated series of MSP Recovery Claims, Series LLC with its principal place of business located at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155.

64.     Series 16-11-509 is a designated series of MSP Recovery Claims, Series LLC with its principal place of business located at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155.

65.     Plaintiff, MSPA Claims 1, LLC is a Florida entity, with its principal place of business located at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155.  MSPA Claims 1, LLC is a citizen of the State of Florida and is not a citizen of the state of the Defendant.  Numerous MAOs, IPAs, MSOs, HMOs, and other Medicare downstream entities have assigned their recovery

rights to assert the causes of action alleged in this complaint to Plaintiff. As part of those assignments, Plaintiff is empowered to recover reimbursement of Medicare payments made by its assignors that should have been paid by the Defendants.

66.     Defendants are Progressive Corporation, which is an insurance holding company, and at least the following direct and indirect subsidiaries and affiliates, Progressive Group of Insurance Companies, Progressive Insurance Company, Progressive American Insurance Company, Progressive Select Insurance Company, Progressive Direct Holdings, Inc., Progressive Casualty Insurance Company, Progressive Classic Insurance, Progressive Northwestern, and Progressive Claims Management, all of whom write automobile insurance in all 50 states and the District of Columbia. Defendant Progressive Corporation, runs the functions of its subsidiaries, including the co-Defendants, through its executive employees. Progressive Corporation is a corporation organized and existing under the laws of the State of Ohio with its principal place of business at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143. The registered agent is CT Corp, 1300 E. 9th Street, Cleveland, Ohio 44114.

67.     Progressive Group of Insurance Companies is a company organized and existing under the laws of the State of Ohio with its principal place of business at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143. The registered agent is CT Corp, 1300 E. 9th Street, Cleveland, Ohio 44114.

68.     Progressive American Insurance Company is a corporation organized and existing under the laws of the State of Ohio with its principal place of business at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143. The registered agent is CT Corporation System, 4400 Easton Commons Way Suite 125 Columbus, Ohio 43219.

69.     Progressive Select Insurance Company is a corporation organized and existing under the laws of the State of Florida with its principal place of business at 4030 Crescent Park Drive, Bldg. B, Riverview, FL 33569.  The registered agent is CT Corporation System, 4400 Easton Commons Way Suite 125 Columbus, Ohio 43219.

70.     Progressive Casualty Insurance Company is a corporation organized and existing under the laws of the State of Ohio with its principal place of business at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143.

71.     Progressive Classic Insurance is a corporation organized and existing under the laws of the State of Ohio with its principal place of business at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143.

72.     Progressive Northwestern is a corporation organized and existing under the laws of the State of Ohio with its principal place of business at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143.

73.     Progressive Direct Holdings, Inc. is a foreign corporation.  The registered agent is CT Corporation System, 4400 Easton Commons Way Suite 125 Columbus, Ohio 43219.

74.     Progressive Insurance Company is a corporation organized and existing under the laws of the State of Ohio.  The registered agent is CT Corporation System, 1300 E. 9th Street, Cleveland, Ohio 44114.

75.     Progressive Claims Management is a corporation organized and existing under the laws of the State of Ohio with its principal place of business at 75-A W. Starr Ave. Franklin, Ohio 43201.

## CLASS DEFINITION

76.     The putative class (hereinafter referred to as "Class Members") is defined as:

All Medicare Advantage Organizations, or their assignees, that provide benefits under Medicare Part C, in the United States of America and its territories, and that made payments for a Medicare beneficiary's medical items and services within the last six years from the filing of the complaint where Defendant:

(1) is the primary payer by virtue of having a contractual obligation to pay for the items and services that are required to be covered by the policy of insurance of the same Medicare Beneficiaries that are also covered by a Medicare Advantage plan; and

(2) failed to pay for the items and services or otherwise failed to reimburse Medicare Advantage Organizations, or their assignees, for the items and services that were provided for medical items and services related to the claims on behalf of the Medicare Beneficiaries;

This class definition excludes (a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

## CLASS ALLEGATIONS

77.     This matter is brought as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of all Class Members, or their assignees, that paid for their beneficiaries' medical expenses, when Defendants should have made those payments as primary payers and should have reimbursed the Class Members.

78.     As discussed in this class action Complaint, Defendants have failed to provide primary payment and/or appropriately reimburse the Class Members for money they were statutorily required to pay under the MSP Act. This failure to reimburse applies to Plaintiffs, as the rightful assignee of MA Entities that assigned their recovery rights to Plaintiffs, and to all Class Members. Class action law has long recognized that, when a company engages in conduct that

has uniformly harmed a large number of claimants, class resolution is an effective tool to redress the harm.  This case, thus, is well suited for class-wide resolution.

79.     Class Members have been unlawfully burdened with paying for the medical costs of their beneficiaries when the law explicitly requires Defendants to make such payments.  The Medicare Act and its subsequent amendments were constructed to ensure an efficient and cost-effective system of cooperation and communication between primary and secondary payers.  Defendants' failure to reimburse Plaintiffs and Class Members runs afoul of the Medicare Act and has directly contributed to the ever-increasing costs of the Medicare system.

80.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy shown as follows:

a.  **Numerosity**:  Joinder of all members is impracticable. Upon information and belief, there are hundreds of MA Entities (including their assignees), throughout the United States, that were not reimbursed by Defendants under a policy which provided Personal Injury Protection ("PIP") or Med Pay coverage for medical expenses arising out of accidents. Thus, the numerosity element for class certification is met.

b.  **Commonality**:  Questions of law and fact are common to all members of the Class. Specifically, Defendants' misconduct was directed at all Class Members, their affiliates, and those respective organizations that contracted with CMS and were identified as "secondary payers" by Medicare Part C.  Defendants failed to make reimbursement payments, report its Ongoing Responsibility for Medical Treatment

("ORM") involving clients who were Medicare beneficiaries, and ensure that Medicare remained a secondary payer, as a matter of course. Thus, all Class Members have common questions of fact and law, *i.e.*, whether Defendants failed to comport with their statutory duty to pay or reimburse Plaintiffs' assignors pursuant to the MSP provisions. Each Class Member shares the same needed remedy, *i.e.*, reimbursement. Plaintiffs seek to enforce their own rights, as well as the reimbursement rights of the Class Members, for medical payments made on behalf of their Medicare Part C beneficiaries, as a result of Defendants' practice and course of conduct in failing to make primary payment or properly providing appropriate reimbursement.

c. **<u>Typicality</u>**: Plaintiffs' claims are typical of the Class Members' claims, as all have been damaged in the same manner. Plaintiffs' and the Class Members' claims have the same essential characteristics, arise from the same course of conduct, and share the same legal theory. As the putative class representative, Plaintiffs possess the same interests and suffered the same injury as the other Class Members, which demonstrates a legally sufficient nexus between Plaintiffs' claims and the Class Members' claims. Plaintiffs' claims are typical of the Class Members' claims because Defendants failed to make primary payments for Enrollees' accident-related medical expenses, which it was obligated to do by their contractual obligations with Enrollees. Plaintiffs' claims are typical because Plaintiffs, like the Class Members, has a right to relief for Defendant's failure to make primary payments, or reimburse Plaintiffs and Class Members for conditional payments of

the Enrollees' accident-related medical expenses. Plaintiffs' and the Class Members' claims are based on the same statutes, regulations, legal theories and factual situations. Defendants' business practices, acts and omissions are materially the same with respect to Plaintiffs' and the Class Members' claims, as will be Defendants' legal defenses. Plaintiffs' claims are, therefore, typical of the Class.

d. **<u>Adequacy</u>**: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs' interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiffs and the putative Class Members. In addition, Plaintiffs re represented by counsel who are competent and experienced in class action litigation and also have no conflicts.

e. **<u>Ascertainability</u>**: Locating members of the Class would be relatively simple, since CMS maintains records of all MAOs, and providing notice to such entities could be accomplished by direct communication.

81. The Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because a class action in this context is superior. Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the Class. Defendant, whether deliberately or not, failed to make required payments under the MSP provisions and failed to reimburse Class Members and those organizations that assigned their recovery rights to Plaintiffs, thus depriving Plaintiffs, as assignees of the right to recovery, and Class Members of their statutory right to payment and reimbursement.

82. It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format. Based on these practices, Plaintiffs maintain a reasonable methodology

for generalized proof of Class-wide impact, using the MSP System designed and developed by Plaintiffs and its counsel. The MSP System captures, compiles, synthesizes and analyzes large amounts of data in order to identify claims for reimbursement of conditional payments. This case will not present manageability problems as compared to non-electronic data driven class actions. There is no need for a fact-specific individual analysis of intent or causation, and damages will be calculated based upon the total fee-for-service amounts associated with the payments made on behalf of Enrollees. Plaintiffs are capable of using the MSP System to identify and quantify Class Members' claims, as it has done for its own claims.

83.     Proceeding with a class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated assignors to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties.  The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

84.     Administering the proposed Class will be relatively simple. Defendant provided no-fault policies with claimants who are also Medicare beneficiaries.  Once that data identifying these policies is compiled and organized, Plaintiffs can determine which of the policy holders were Medicare beneficiaries during the applicable time.  Then, using the database, Plaintiff and the

Class Members can identify those payments made for medical treatment where the Defendant was (1) the primary payer and (2) for which reimbursement was not made.

## CAUSES OF ACTION

85.     Plaintiffs' claims result from Defendants' failure to pay or reimburse Medicare payments which are secondary, as a matter of law, and must be reimbursed if a primary payer is available.  Defendants issue no-fault insurance policies and are thus primary payers liable under the MSP Act.

## COUNT I
## Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)

86.     Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

87.     Plaintiffs assert a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A) on behalf of themselves and all similarly-situated parties.

88.     The elements of a cause of action under 42 U.S.C. § 1395y(b)(3)(A) are: (1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) damages. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016).

89.     Defendants' no-fault policies are primary plans, which rendered Defendants as primary payers for the accident-related medical expenses.

90.     As part of providing Medicare benefits to Medicare beneficiaries enrolled under the Medicare Advantage program, the Class Members and Plaintiffs' assignors paid for items and services which were also covered by no-fault insurance policies issued by Defendants.

91.     More specifically, Plaintiffs' and the Class Members' Medicare beneficiaries were

also covered by no-fault, PIP, or medical payments policies issued by Defendants.

92.     Because Defendants are primary payers, the Medicare payments for which Plaintiffs seek reimbursement were conditional payments under the MSP Act.

93.     Defendants were required to timely and properly reimburse Plaintiffs' assignors for their conditional payments of the Enrollees' accident-related medical expenses. *See* 42 U.S.C. § 1395y(b)(2)(ii); 42 C.F.R. § 411.22(b)(3); *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1355 (11th Cir. 2016). Defendants failed to do so.

94.     Plaintiffs and the Class Members have suffered money damages as a direct result of Defendants' failures to reimburse the accident-related medical expenses.

95.     Defendants have derived substantial profits by placing the burden of financing medical treatments for their policyholders upon the shoulders of Plaintiffs' assignors and the Class Members.

96.     In this case, Defendants failed to administratively appeal Plaintiffs' assignors' right to reimbursement within the administrative remedies period on a class wide basis. Defendants, therefore, are time-barred from challenging the propriety or amounts paid.

97.     Plaintiffs, for themselves and on behalf of the Class, brings this claim pursuant to 42 U.S.C. § 1395y(b)(3)(A), to recover double damages from Defendants for their failure to make appropriate and timely reimbursement of conditional payments for the Enrollees' accident-related medical expenses.

## COUNT II
### Direct Right of Recovery Pursuant to 42 C.F.R. § 411.24(e) for Breach of Contract

98.     Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

99.     Plaintiffs' assignors are subrogated the right to recover primary payment from Defendants for the Defendants' breach of contract with their insured, pursuant to the MSP Act. Specifically, Defendants were contractually obligated to pay for medical expenses and items arising out of accidents, and Defendants failed to meet that obligation.  This obligation was, instead, fulfilled by Plaintiffs and other Class Members.  Under the MSP provisions, Plaintiffs are permitted to subrogate the enrollee/insured's right of action against Defendants. *See* 42 C.F.R. § 411.26.

100.     Plaintiffs complied with any conditions precedent to the institution of this action, to the extent applicable.

101.     Defendants failed and/or refused to make complete payments of the Enrollees' accident-related expenses as required by their contractual obligations.

102.     Defendants failed to pay each enrollee's covered losses, and Defendants have no reasonable proof to establish that they were not responsible for the payment.

103.     Defendants' failure to pay the medical services and/or items damaged Plaintiffs and the Class Members as set forth herein.  Plaintiffs and the Class Members processed medical expenses and are entitled to recover up to the statutory policy limits for each enrollee's medical expenses related to the subject accidents, pursuant to their agreements with CMS and the provider of services.

## JURY TRIAL DEMAND

104.     Plaintiffs demand a trial by jury on all of the triable issues within this pleading.

## PRAYER FOR RELIEF

105.     WHEREFORE, Plaintiffs, individually and on behalf of the Class Members

described herein, pray for the following relief:

a. find that this action satisfies the prerequisites for maintenance of a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and certify the Class;

b. designate Plaintiffs as representative for the Class and Plaintiffs' undersigned counsel as Class Counsel for the Class; and

c. issue a judgment against Defendants that:

    i. grants Plaintiffs and the Class Members a reimbursement of double damages for those monies the Class is entitled to under 42 U.S.C. § 1395y(b)(3)(A);

    ii. grants Plaintiffs and the Class Members a reimbursement of damages for those moneys the Class is entitled to pursuant to their direct right of recovery for breach of contract within Count II;

    iii. grants Plaintiffs and the Class Members pre-judgment and post-judgment interest consistent with the statute; and

    iv. grants Plaintiffs and the Class Members such other and further relief as the Court deems just and proper under the circumstances.

Dated: October 1, 2018               Respectfully submitted,

                                           /s/Tracy L. Turner
                                           Tracy L. Turner, Of Counsel, OH Bar No. 069927
                                           PENDLEY, BAUDIN & COFFIN, LLP
                                         7573 Ogden Woods Blvd
                                         New Albany, OH 43054
                                         Phone: (614) 657-3454
                                         tturner@pbclawfirm.com

                                           Christopher L. Coffin *(to be moved pro hac vice)*
                                         PENDLEY, BAUDIN & COFFIN, LLP
                                         1100 Poydras Street, Suite 2505
                                         New Orleans, LA 70163
                                         Phone: (504) 355-0086
                                         Fax: (504) 355-0089
                                         ccoffin@pbclawfirm.com

Rafael de la Grana *(to be moved pro hac vice)*
MSP RECOVERY LAW FIRM
5000 SW 75th Avenue, Suite 400
Miami, Florida 33155
Phone: (305) 614-2222
rdelagrana@msprecoverylawfirm.com