**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MSP RECOVERY CLAIMS, SERIES LLC., ET AL.,** | ) | **CASE NO.1:18CV2273** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **THE PROGRESSIVE CORPORATION, ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendants.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs'

Complaint.  (ECF # 28).  For the following reasons, the Court GRANTS in part, and DENIES

in part, Defendants' Motion.

**Procedural History**

On October 1, 2018, Plaintiffs filed their Complaint with the Court, asserting claims

under 42 U.S.C. § 1395y(b)(3)(A) and Breach of Contract on behalf of themselves and a class

of similarly situated persons.  In November of 2018, the case was transferred to Judge Boyko

from Judge Gaughan.  In December 2018, Defendants filed their Motion to Dismiss.  In

January 2019, Plaintiffs filed their Brief in Opposition and in February 2019 Defendants filed

their Reply.  In June 2019, the case was reassigned to Judge Barker and in July 2019 the case was reassigned to Judge Boyko.

**Medicare Advantage Act**

Plaintiffs' claims arise from their  alleged rights as assignees of Medicare Advantage Organizations ("MAOs") to recover from no-fault insurers who are primary payers under Medicare for conditional payments made under the Medicare Secondary Payer Act ("MSPA")[1].  A brief overview of the Medicare statutory scheme is necessary to understand the claims.

In 1965 Congress enacted Medicare, a federal health insurance program for those 65 and over.  The Medicare Act comprises five parts: Part A, Part B, Part C, Part D and Part E.  Only Parts A, B and C are relevant to this Opinion.  Parts A & B regulate the traditional fee for service Medicare program which is administered by the Centers for Medicare & Medicaid Services ("CMS").  Part C governs the Medicare Advantage program wherein private insurers (MAOs) provide medicare benefits to eligible participants.  Prior to the enactment of the MSPA, Medicare paid all covered expenses leaving private insurers to pay any remaining expenses.  Thus, Medicare was the primary payer and private insurers were secondary.  In 1980, Congress enacted the MSPA in an effort to stem the rising costs of Medicare.  The MSPA made Medicare the secondary payer and designated certain private entities such as group health plans, workers' compensation and automobile or liability insurance plans as primary payers.   The MSPA prohibits Medicare from paying for items and services "if payment has been made or can reasonably be expected to be made" by a primary plan.

---

[1] Also referred to herein as the MSP Act.

§1395y(b)(2)(B)(ii).

In cases where the primary payer "has not made or cannot reasonably be expected to make payment with respect to the item or service promptly," Medicare may make a conditional payment and then recover the paid amount from the primary payer "if it is determined that such primary plan has or had a responsibility to make payment with respect to such item or service."  § 1395y(b)(2)(B)(i).   This determination is made under the statute by "a judgment, a payment conditioned upon the recipient's compromise, waiver or release (whether or not there is a determination or admission or liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured or by other means."  Id. at (ii).  The MSPA authorizes Medicare to recover double damages against primary payors who were responsible to pay under a primary plan.   The MSPA also authorizes " a private right of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)." §1395y(b)(3)(A).

The Medicare Advantage Act, known commonly as Part C, was enacted in 1997 after the enactment of the MSPA.   Under the terms of the Act, eligible participants of Medicare may obtain their Medicare benefits through private insurers operating as MAOs.   CMS subsidizes Part C health insurance by paying MAOs a fixed fee per enrollee each month.  Part C includes a secondary payer provision allowing an MAO to recover from a primary plan expenses paid on behalf of a Part C participant.  § 1395w-22(a)(4).  Although § 1395w-22 does not contain a private right of action, the CMS regulations confer upon an MAO the "same rights to recover from a primary plan, entity, or individual that the Secretary exercises

under the MSP regulations in subparts B through D of part 411 of this chapter."  42 C.F.R. § 108(f).

### Allegations in the Complaint

According to the Complaint, Defendants are "no fault" automobile insurers who are obligated by statute to provide primary payment or reimburse secondary payments made by MAOs on behalf of Medicare beneficiaries who are enrolled in Part C of the Medicare Act, for medical expenses resulting from injuries sustained in automobile accidents.  The Medicare beneficiaries were enrolled in Medicare Advantage health plans offered and/or administered by MAOs.

Plaintiffs are entities which allege that they have been assigned "all rights, title, and interest allowing them to bring these claims" by MAOs.  Plaintiffs allege that Defendants failed to pay medical items and services that they were statutorily obligated to pay, resulting in economic loss to Plaintiffs.

### Defendants' Motion to Dismiss

Defendants move to dismiss Plaintiffs' Complaint on five separate theories.  First, they argue Plaintiffs lack standing to bring their claims because Plaintiffs are not in fact, MAOs and lack any valid assignments of rights.  Second, Defendants argue Plaintiffs wrongfully assert claims against certain Defendants who are not obligated to make payments under the MSPA.  Third, Defendants contend Plaintiffs' MSPA claims fail as a matter of law because even if the assignments are valid, MAOs do not have a private right of action under the MSPA.  Furthermore, even if they had a private right of action, they are barred from

4

bringing these claims because they are outside the three year presentment window.  Fourth, Plaintiffs Complaint fails to allege any cognizable injury after making conditional payments because Plaintiffs fail to allege they presented Defendants with a claim for reimbursement. Lastly, Defendants argue the Complaint fails to allege facts identifying an insured beneficiary covered under Defendants' insurance policies, nor does the Complaint identify any Defendant that refused reimbursement.

## LAW AND ANALYSIS

### Standard of Review

When a Defendant challenges standing on a motion to dismiss, it is plaintiff's burden to prove the existence of subject matter jurisdiction.  *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986).  Such challenges are brought by two different methods: (1) facial attacks and (2) factual attacks.  *See, e.g.*, *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

"A *facial* attack is a challenge to the sufficiency of the pleading itself.  On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party."  *Walters v. Leavitt*, 376 F.Supp.2d 746, 752 (E.D. Mich. 2005), citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974).  "A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction.  On such a motion, no presumptive truthfulness applies to the factual allegations... and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Walters*, 376 F.Supp.2d at 752.

Defendants argue that Plaintiffs lack standing to sue because they have not shown that

they (through their alleged assignors) have suffered an injury-in-fact.  Plaintiffs bear the burden of establishing Article III standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  "To satisfy Article III's standing requirements, a plaintiff must show: '(1) [he] has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'"  *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581 (6th Cir. 2016); *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606-07 (6th Cir. 2007); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000).  "For an injury to be particularized, 'it must affect the plaintiff in a personal and individual way.'"  *Soehnlen*, 844 F.3d at 581-82.

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "Under Rule 12(b)(6), a complaint may be dismissed 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'"  *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

A claim must, "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Further, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft*, 556 U.S. 678 (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 554, 556) (2017)).  "To survive a motion to dismiss, [plaintiff] must allege 'enough facts to state a claim to relief that is plausible on its face.'"

*Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2017)).

In deciding a motion to dismiss under 12(b)(6), a court must accept as true all the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Thus, courts must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). However, plaintiff must provide "more than labels and conclusions . . . a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 557.

When a court is presented with a Rule 12(b)(6) motion, it may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

**<u>Private Right of Action</u>**

The first issue to be addressed is a legal question. May an MAO assert a private right of action under the MSPA? Relying on Sixth Circuit precedent, Defendants contend MAO's have no private right of action under the MSPA's double-damages provision. Thus, if the MAO lacks a private right of action, purported assignees of the rights of the MAO would also lack a private right of action.

The Court's analysis starts with the plain language of the MSPA where the private right of action is found in 1395y(b)(3)(A), wherein it reads:

### (3) **Enforcement**

### (A) Private cause of action

There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

The Sixth Circuit has remarked that the MSPA "emerged from congressional efforts to reduce the costs of the Medicare Program" and "mandates that Medicare will generally be the secondary insurer where other insurance coverage is available to the beneficiary." *Care Choices HMO v. Engstrom,* 330 F.3d 786, 790 (6th Cir. 2003).   Defendants cite to *Engstrom* for the proposition that MAOs do not have a private right of action against primary plans. *Engstrom* did not involve a private right of action by an MAO, but instead dealt with whether a Health Maintenance Organization ("HMO") had a private right of action under a Medicare subsection similar to that of the MAO statute.  In *Engstrom*, the Sixth Circuit considered whether HMO's had a private right of action under 42 U.S.C. §1395mm(e)(4), the Medicare subsection concerning HMO rights.  In reaching the conclusion they did not, the Sixth Circuit compared § 1395mm with § 1395y and found that by comparison, § 1395y evinced a clear indication that Congress intended the Medicare Program to have more extensive rights than HMOs.  Among these more extensive rights are the right of the Medicare Program to obtain reimbursement from primary insurers.   According to Defendants, the language of §1395y(b)(3)(A) does not apply to MAOs, but rather applies only to beneficiaries or health care providers who have made conditional payments and have gone unreimbursed after timely presentment of a claim to the responsible party.  According to Defendants, MAO rights are

similar to those of HMOs and are found in § 1395w-22(a)(4), which reads:

**(4) Organization as secondary payer**

Notwithstanding any other provision of law, a Medicare+Choice organization may (in the case of the provision of items and services to an individual under a Medicare+Choice plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section--

**(A)** the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or

**(B)** such individual to the extent that the individual has been paid under such law, plan, or policy for such services.

Neither 1395mm nor 1395w contain a express private right of action. The Sixth Circuit in *Engstrom* considered whether HMOs had an implied private right of action and found there was no rights-creating language in 1395mm that would imply a private right of action for HMOs. Defendants analogize the 1395mm which applies to HMOs with 1395w-22 which applies to MAOs in arguing that the two statutes are similar in that there is no private right of action as neither subsection contains an express private right of action. Therefore, the Sixth Circuit's holding in *Engstrom* that HMOs possess no private right of action against primary plans applies equally to MAOs.

Defendants further contend that the Sixth Circuit's decision in *Michigan Spine and Brain Surgeons, PLLC v. State Farm Mut. Auto Ins. Co.* 758 F.3d 787 (6th Cir. 2014) also establishes that Plaintiffs cannot assert a private right of action under § 1395y against Defendants. *Michigan Spine* involved a health care provider's action for reimbursement against a primary insurer. In examining who could bring a private right of action, the Sixth

9

Circuit considered a prior decision in *Bio–Medical Applications of Tennessee, Inc. v. Central States Southeast & Southwest Areas Health & Welfare Fund,* 656 F.3d 277, 285 (6th Cir.2011), wherein the court held "a primary plan is liable under the private cause of action when it [1] discriminates against planholders on the basis of their Medicare eligibility and [2] therefore causes Medicare to step in and (temporarily) foot the bill." *Id.*

Defendants argue that even if a private right of action exists for Plaintiffs, the MSPA requires that for Defendants to be liable, Plaintiffs must show Defendants caused Medicare to step in and foot the bill by denying coverage and/or payment.  Yet, the Complaint is silent that Plaintiffs presented claims to Defendants which Defendants denied.  Without some allegation that Defendants failed to provide coverage after timely presentment of a claim, Plaintiffs' lack a private right of action under § 1395y, according to Defendants.

Plaintiffs, in opposition, provide a list of eight cases wherein courts have found that MAOs have a private right of action under § 1395y(b)(3)(A).  Relying primarily on the Third Circuit decision in *In re Avandia Marketing, Sales Practices and Products Liability Litigation,* 685 F.3d 353 (3rd Cir. 2012), Plaintiffs contend that § 1395y(b)(3)(A) is broadly worded to include MAOs.  Even if it were ambiguous, deference to CMS regulations would require a finding that MAOs possess the same rights as Medicare to recover payments.  The Eleventh Circuit also concluded that MAOs possess a private right of action under § 1395y(b)(3)(A).  See *Humana Medical Plan, Inc. v. Western Heritage Insurance Co.*  832 F.3d 1229 (11th Cir. 2016).

Plaintiffs also point out that the Sixth Circuit authority relied on by Defendants did not involve the applicability of the MSPA to MAOs.  Plaintiffs note that the *Engstrom* case did

10

not involve § 1395y's private right of action, but rather concerned an implied right of action under §1395mm, therefore, it has no precedential value on whether an MAO possesses a private right of action under § 1395y.

In their Reply, Defendants ask the Court to consider the plain text of § 1395y wherein a private right of action is conditioned upon the application of paragraphs 1 and 2(A).  In *Bio-Medical* and *Michigan Spine,* the Sixth Circuit determined that paragraph (1) prohibits group health plans from denying benefits on the ground that an individual is eligible for Medicare Part A.  Paragraph (2) forbids the Secretary from making payments when an insurance policy has paid, or is expected to pay unless the Secretary makes a payment conditioned on reimbursement where the primary plan is not available or expected.  According to Defendants, neither of these paragraphs addresses MAOs, whose rights are limited to those found in subsection § 1395w-22.  However, even if MAOs could assert rights under 1395y they would have to comply with Paragraph (2), which Defendants contend requires Plaintiffs to  present their claims for payment to the primary plan before bringing suit.  Because Defendants contend Plaintiffs fail to allege such presentment, they are prohibited from bringing their claims.

Defendants further dispute Plaintiffs' contention that Defendants' reliance on *Engstrom* was flawed because *Engstrom* involved an implied right of action.  Rather, Defendants contend they cited *Engstrom* for the proposition that HMOs, under statutory provisions similar to those in 1395w-22, were found to only possess contractual rights for reimbursement.  Therefore, by analogy, MAOs are also limited to contractual reimbursement rights.

11

Lastly, Defendants contend that the primary purpose of the MSPA is to save taxpayer money by incentivizing recovery on the government's behalf.  However, because MAOs are paid a fixed amount of money by the government per beneficiary, taxpayers pay the same amount whether the MAO recovers or not.   Therefore, there is no benefit to the Medicare Fund for an MAO to have a private right of action because no monies were expended by Medicare to pay the beneficiary's medical expenses and therefore, no recovered monies would be returned to Medicare.

In *Humana Medical Plan*, the Eleventh Circuit addressed the very question presented to the Court.  Does § 1395y(b)(3) provide a private right of action for an MAO against a primary insurer?  In answering in the affirmative, the Eleventh Circuit provided a comprehensive overview of the Medicare Act and its subsequent amendments, including the MSPA.  The Eleventh Circuit found that "the MSP private cause of action is not a qui tam statute but is available to a Medicare beneficiary whose primary plan has not paid Medicare or the beneficiary's healthcare provider."  *Id.* at 1234.  The Eleventh Circuit noted that the Sixth Circuit in *Michigan Spine* found that the MSPA provides a private cause of action to healthcare providers who have not been paid by primary insurers. *Id.* at 1235.  In concluding that the private right of action extends to MAOs, the Eleventh Circuit considered the plain language of 1395y and the regulations accompanying § 1395y, and concluded both the plain language and the regulations support an MAO's private right of action.  42 C.F.R. § 422.108(f) states that an MAO "will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter."   42 C.F.R. § 411.24(e) and § 411.24(g) authorize the

12

Secretary to bring an action against both a primary payer and against any entity, including a beneficiary, that receives a primary payment.

The Eleventh Circuit further drilled into § 1395y, finding it a comprehensive scheme wherein  paragraph 2(A) contemplates that primary plans will fulfill their payment obligations;  paragraph 2(B) addresses the options available to the Secretary when the primary plan fails to make its payment obligation; and paragraph 3(A) provides for a private right of action when a primary payer undermines the secondary payer scheme created in paragraph 2(A) by failing to make its primary payment.

The Eleventh Circuit then considered if MAOs could avail themselves of the private right of action.   The Eleventh Circuit rejected defendant's argument that MAOs were restricted to the right to charge provision in § 1395w-22(a)(4), finding that the plain language of 2(A) refers to all Medicare payments, which includes MAOs.  Also,  the right-to -charge provision of § 1395w-22(a)(4) parenthetically refers to circumstances wherein MAO payments are made secondary pursuant to § 1395y(b)(2).  Thus, the Eleventh Circuit found that the MAO's right-to-charge contemplates that MAO payments are secondary to primary payments under the MSPA.  Because paragraph 2(A) of § 1395y(b) establishes secondary payer status for all Medicare payments, the Eleventh Circuit held that secondary payers may recover regardless of whether the secondary payer is the Secretary or an MAO.

The Eleventh Circuit concluded, "therefore an MAO may avail itself of the MSP private cause of action when a primary plan fails to make primary payment or reimburse the MAO's secondary payment."  *Id* at 1238.

The *Humana* decision contains a vigorous dissent that argues there is no private action

13

for an MAO under the MSPA because § 1395y(b)(3)(A) is limited in its scope by its requirement that a failure to pay is in accordance with paragraphs 1 and 2(A).  Paragraph 1 prohibits group health plans and large group health plans from denying benefits based on eligibility for Medicare Part A.  Paragraph 2(A) prohibits the Secretary from making payments when an insurance policy has paid or is reasonably expected to pay except under paragraph (B) when the Secretary makes a payment conditioned on reimbursement of the Trust Funds.  According to the dissent, paragraphs (1) and (2) (A) provide no authority for an MAO because the MAO is not the Secretary and MAOs make no payments out of the Trust Funds.  The dissent argues that the right-to-charge provision in §1395w-22 is the sole provision under which MAOs may obtain payment.  Even though §1395w-22 cross references §1395y(b)(2), it simply explains when MAO coverage is secondary to a primary plan and does not subject MAOs to all the subparts of §1395(y(b)(2).  By failing to take into account the limiting phrase of §1395y(b)(3), that the private right of action be "in accordance with paragraphs (1) and (2)(A), the majority grants MAOs a private right where none exists according to the dissent. The dissent further discounted the applicable regulations and disagreed with the majority that MAOs are always obligated to make secondary payments.

As an initial matter, the Court finds that the question of whether Plaintiff has a private right of action under a statute does not implicate the Court's subject matter jurisdiction. Federal courts possess subject matter jurisdiction to interpret federal statutes and whether a federal statute confers on a plaintiff a private right of action involves the court exercising its authority to so interpret.  See *Burks v. Lasker*, 441 U.S. 471 (1979).  (" The question whether a cause of action exists is not a question of jurisdiction, and therefore may be assumed

14

without being decided."). *M.J. Whitman & Co. Inc. Pension Plan v. American Financial Enterprises, Inc.,* 725 F.2d 394, 396 n. 2 (6th Cir. 1984) ("If a statute does not authorize a private right of action, the court should dismiss for failure to state a claim upon which relief can be granted, not for lack of subject matter jurisdiction.")  See also *Bell v. Hood,* 327 U.S. 678, 682 (1946). ("For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.").  Thus, the Court finds it has subject matter jurisdiction to interpret the MSPA in order to determine whether the MSPA confers on MAOs a private right of action.

We start with the language of the statute which reads in pertinent part: "There is established a private right of action for damages....in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)."  1395y(b)(3)(A).  The Court finds that there is no dispute that §1395y(b)(3)(A) expressly provides there is a private right of action to recover from a primary plan, thereby distinguishing this chapter from §1395mm or §1395w which contain no such express private right of action.  The question then becomes, to whom does it confer a private right of action?

The language of § 1395y(b)(3)(A) is broadly worded and would encompass MAOs in its scope.  See *Avandia* 685 F.3d at 357 ("We find the plain text of the provision sweeps broadly enough to include MAOs...").  There is no limiting language that would place the right solely with beneficiaries or health care providers.  Surely, had Congress intended to so limit the private right of action it could have done so.  As the Third Circuit in *Avandia* stated, "Had it (Congress) intended to prevent them (MAOs) from suing under the private cause of

15

action provision, Congress could have done so explicitly." *Avandia*, 685 F.3d at 360. There is no such language in the statute and the Court will not read such a limitation into the plain language.

The only limiting language may be the last phrase, "in accordance with paragraphs (1) and (2)(A)." Paragraph (1) deals with group plans and is not applicable in this case. Paragraph (2)(A) defines primary plan and prohibits Medicare and MAOs from making any secondary payment when there is a primary plan, the lone exception being the conditional payment provision found in paragraph (2)(B). See *Humana,* 832 F.3d at 1236.

The Court agrees with the Eleventh Circuit in *Humana* that § 1395y(b)(2)(A) refers to all Medicare payments, which includes Medicare and Medicare Advantage payments. (2)(A) makes no distinction about the payments but rather simply states, "Payment under this subchapter may not be made, except as provided in Subparagph B...." Again, had Congress wanted to limit this provision to only those payments made by Medicare it could have done so. Instead, the plain language encompasses all Medicare payments, which would include MAO payments. This comports with the rest of the Medicare statute, particularly §1395w-22(a)(4), which recognizes MAO payments are made secondary to §1395y(b)(2). Thus, MAOs like Medicare, are secondary payers.

Furthermore, the Court agrees with the reasoning of the Third Circuit in *Avandia* that even if the language of § 1395y(b)(3) is ambiguous, *Chevron* deference would require the same conclusion that MAOs possess a private right of action. There is no dispute that the Secretary of CMS has the authority to implement regulations to carry out the purposes of Medicare and its regulations are entitled to deference from the Court. See 42 U.S.C. §

16

1395hh(a)(1).

42 C.F.R. § 422.108(f) states, "MA Organizations will exercise the same rights to recover from a primary plan, entity or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter."   Thus, the Secretary has determined that MAOs are able to exercise the same secondary payment recovery rights against primary plans as Medicare.

Having considered all the arguments and cases presented, the Court finds that the greater weight of authority militates in favor of finding MAO's and their assigns may maintain a private right of action against primary plans under the MSPA.

**Presentment**

According to Defendants, Plaintiffs' claims must also fail because the Complaint fails to allege that Plaintiffs presented their claims for payment to Defendants within a three year presentment limitation found in § 1395y(b)(2)(B)(vi), which reads in pertinent part:

> Notwithstanding any other time limits that may exist for filing a claim under an employer group health plan, the United States may seek to recover conditional payments in accordance with this subparagraph where the request for payment is submitted to the entity required or responsible under this subsection to pay with respect to the item or service (or any portion thereof) under a primary plan within the 3-year period beginning on the date on which the item or service was furnished.

Without a timely presentment of claims for payment within three years of the date of treatment, Defendants contend Plaintiffs cannot bring a claim against them in federal court as the three year limitation is a condition precedent to suit.  According to Defendants, all of Plaintiffs' representative claimants were treated more than three years prior to the suit. Therefore, the claims must be dismissed as outside the limitations period.

17

Plaintiffs dispute that § 1395y(b)(2)B)(vi) provides for the relevant limitation period

and instead point the Court to § 1395y(b)(2)(B)(iii), which reads:

> In order to recover payment made under this subchapter for an item or service,
> the United States may bring an action against any or all entities that are or
> were required or responsible (directly, as an insurer or self-insurer, as a third-
> party administrator, as an employer that sponsors or contributes to a group
> health plan, or large group health plan, or otherwise) to make payment with
> respect to the same item or service (or any portion thereof) under a primary
> plan....

> An action may not be brought by the United States under this clause with
> respect to payment owed unless the complaint is filed not later than 3 years
> after the date of the receipt of notice of a settlement, judgment, award, or other
> payment made pursuant to paragraph (8) relating to such payment owed.

Both sides cite to contrasting Florida district court cases in support of their respective

positions.  Therefore, the Court must once again wade into the murky and foreboding waters

of the Medicare Act.[2]

The Court again begins, as it must, with the plain language of the statute.  §

1395y(b)(2)(B)(iii) places a clear three-year limitations period on actions by the United States

---

[2]    The Medicare Act has been referred to as "remarkably abstruse" *MSP Recovery
       LLC v. Allstate Ins. Co.* 835 F.3d 1351, 1358 (11 Cir. 2016); a "complex maze"
       *MSPA Claims 1, LLC v. Bayfront HMA Medical Center* No. 17CV21733, 2018
       WL 1400465 (S.D. Florida March 20, 2018); and "the most completely
       impenetrable texts within human experience" *Avandia* 685 F.3d at 365.  The
       Court gives no credence to the whispered tales of courts that wandered innocently
       into the tangled forest of the Medicare Act never to be heard from again.  Yet, in
       an abundance of caution, should some tragedy befall us, we want our mothers to
       know we loved them and ask that the same inscription be given this Court, with
       slight modification, as was given the Spartan dead at Thermopylae:  " Go tell
       Congress, stranger passing by.  That here, because of their convoluted laws, we
       lie."

18

to recover conditional payments when a primary plan fails to pay. The statute uses prohibitory language: "An action ***may not*** be brought by the United States" outside the three-year period which is triggered by the "receipt of notice of a settlement, judgment, award, or other payment made pursuant to paragraph (8)..."

Compare the above paragraph to § 1395yb(2)(B)(vi), which does not contain mandatory language, but instead is written permissively. "United States ***may*** seek to recover conditional payments in accordance with this subparagraph ." There is no language prohibiting a subsequent suit by the United States if it fails to assert a claim against the primary plan within the three-year claim period after service is rendered. Contrary to the Florida Judge's holding in *MSPA Claims, 1 LLC v. Kingsway Amigo Insurance Co.,* 361 F.Supp.3d 1270 (2018) that §1395y(b)(2)(B)(vi) is an unambiguous limitation period, the Court agrees with Plaintiffs that (vi) merely authorizes the United States to assert a claim against a primary plan within a three year period regardless of whether a group plan contains a shorter period for asserting a claim. Furthermore, by its plain terms it may be read to limit its application only to claims against group health plans by the phrase, "Not withstanding any other time limits that may exist for filing a claim under an employer group health plan," and "in accordance with this subparagraph." Regardless, this language does not place any limit on the United States from bringing an action if it does not file a claim. Furthermore, it contains no language concerning any consequence for filing a claim outside the limitation period. However, there is a clear limitation period found in 2(B)(iii) and Defendants do not contend Plaintiffs Complaint was filed outside that limitation period. Thus, under statutory interpretation rules, the specific clear limitation period found in (iii) controls the general

permissive claim filing period found in (vi), and the Court holds that purposes of litigation, (iii) presents the obvious limitation period.

Thus, on a Motion to Dismiss, the Court holds that Plaintiffs failure to file a claim in the three-year time period of (vi) is not condition precedent that deprives this Court of jurisdiction and therefore, denies Defendants' Motion to Dismiss on this issue.

### Plaintiffs' Standing to Bring MSPA Claims

Plaintiffs had previously filed their claims with this Court in *MAO-MSO Recovery II, LLC v. Progressive Corp.,* No. 1:17CV686, 2018 WL 4075880 (N.D. Ohio Aug. 27, 2018) and *MAO-MSO Recovery II, LLC., v. Progressive Corp.,* No 1:17CV390, 2018 WL 3438950 (N.D. Ohio July 17, 2018).  The Court dismissed the claims without prejudice because Plaintiffs lacked assignments demonstrating they had standing to assert the claims.  In refiling this action, Plaintiffs have attached assignments from four alleged MAO assigners that Plaintiffs allege confer standing.  Defendants argue the attached assignments from Florida Healthcare Plus ("FHCP"), Interamerican Medical College Center Group ("IMC"), SummaCare and Connecticare, fail to support the claims in the Complaint.

### FHCP and IMC

Plaintiffs attached to their Complaint an April 15, 2014 Agreement between MAO FHCP and La Ley Recovery.  Article 1 of the Agreement reads that FHCP retains La Ley to "recover costs already paid for and/or generate revenue on a fee for services provided and/or shift current expenses incurred for FHCP insureds."  The Agreement also contains the following language: "By way of this agreement Client (FHCP) appoints, directs and otherwise

20

assigns all of client's (FHCP's) rights as it pertains to the rights pursuant to any plan, State of Federal Statute whatsoever directly and/or indirectly for any its (sic) members and/or plan participants."  The Agreement further required that any subsequent assignment by La Ley must be approved by FHCP.

Plaintiffs further attach a February 20, 2015 Assignment of Claims and Causes of Action from La Ley to Plaintiffs assigning them all assigned claims from FHCP to La Ley. This subsequent assignment reads: " Assignor (La Ley) hereby irrevocably assigns, transfers, conveys, sets over, and delivers to Assignee (MSPA) or its assigns any and all of Assignor's right, title, ownership and interest in an to all rights and entitlements, that Assignor has, may have had, or has asserted against third parties arising from or relating to the Claims."

According to Defendants, Plaintiffs did not obtain valid and enforceable assignments from MAOs because: (1) the purported assignments did not assign reimbursement rights but instead are merely administrative agreements that require La Ley and MSP Recovery to provide clerical and financial services to FHCP and IMC.  (2) Even if the assignments were valid assignments for reimbursement, the assignments do not indicate to whom the rights are assigned.  (3) FHCP and IMC's assignments expressly require  approval of FHCP and IMC before Lay Ley and MSP Recovery could further assign the rights, yet the Complaint and evidence before the Court fail to demonstrate La Ley and MSP Recovery obtained the permission of FHCP and IMC before reassigning their rights.  (4) FHCP was in receivership in 2015 and repudiated the assignment to Plaintiffs and finally, (5) in a prior action, Plaintiffs alleged that FHCP has assigned all their rights to another entity, thus, their claims in this case cannot be true.

21

Plaintiffs respond that the assignments are broadly written and are valid and enforceable.  A settlement with the Receiver for FHCP demonstrates FHCP approved of the subsequent assignment and an affidavit of IMC demonstrates it approved of the subsequent assignment to Plaintiffs.

Furthermore, Plaintiffs dispute Defendants' claim that Plaintiffs, in a case filed in another venue, made the conflicting representation that FHCP assigned all its rights to a separate entity, not La Ley.  If FHCP did in fact assign its MAO rights to another entity and not La Ley, then this contradicts Plaintiffs' allegations in this case that La Ley was assigned all FHCP claims.  According to Plaintiffs, the claims referred to by Defendants involved only the assignment of the claims of a single claimant and do not bar this action.

Having considered the FHCP assignment, the Court finds the language of both the FHCP and La Ley assignments assigned FHCP's right to reimbursement for payments made to La Ley and La Ley's assignment conveyed those same rights to Plaintiffs.  The FHCP assignment is broadly written and assigns "all of Client's (FHCP's) rights as it pertains to the rights pursuant to any plan, State or Federal statute whatsoever directly and/or indirectly for any of its members and/or plan participants."  Similarly, the La Ley assignment to MSPA also contains broadly worded assignment language encompassing FHCP's rights to recover payments from a primary plan.

Furthermore, FHCP was placed in Receivership in December of 2014.  As part of a settlement with the Receiver, on June 1, 2016,  La Ley, the Receivership of FHCP and Plaintiffs agreed that "Receiver acknowledges and agrees that the terms and conditions of the Initial Agreement [La Ley Recovery Agreement] shall remain in full force and effect..."  It

22

further acknowledged that La Ley, ( which included Plaintiffs MSP entities) had been irrevocably assigned FHCP recoveries related to accidents or incidents recoverable pursuant to the MSPA.   Thus, Plaintiffs have demonstrated that the FHCP Receiver, on behalf of FHCP, approved the assignment from La Ley to Plaintiffs.

Defendants also contend the assignment is invalid because Plaintiffs represented in another case against Allstate that La Ley had assigned all its rights to FHCP's claims to MSP Recovery, LLC., an entity not named in this suit, six months prior to La Ley's assignment to Plaintiffs in this suit.  See *MSP Recovery, LLC v. Allstate Ins. Co.,* 276 F. Supp. 3d 1311, 1312–13 (S.D. Fla. 2017), appeal dismissed, No. 17-12355-JJ, 2017 WL 5664843 (11th Cir. Aug. 7, 2017).  ("On August 29, 2014, La Ley assigned the recovery and reimbursement rights that it received from FHCP to the Plaintiff, MSP Recovery, LLC ("MSP").").  Without the assignment described in *Allstate*, the Court cannot say if this allegation refers to all recovery and reimbursement rights of FHCP, or if it was limited to only those of a particular claimant.  Without something more, the Court finds the allegation does not trump the assignments presented in this case, which demonstrate valid assignments to Plaintiffs. However, this issue may be revisited on summary judgment should Defendants produce the assignments in *Allstate*.

**IMC**

For the same reasons, the Court holds that the IMC assignments are valid and enforceable.  On December 16, 2014, IMC, an MAO, assigned its rights to recover payments to MSP Recovery, LLC in a MSP Recovery LLC Agreement.  This Agreement contains nearly the identical language to the FHCP-La Ley assignment and the Court finds it is

23

sufficiently broad to encompass IMC's rights to recover its payments from a primary plan. Similarly, the subsequent February 20, 2015 assignment from MSP Recovery LLC to Plaintiffs contains the following language expressing a clear assignment of IMC's rights to recover payments from primary plans: "Assignor (MSP Recovery LLC) hereby irrevocably assigns, transfers, conveys, sets over, and delivers to Assignee (Plaintiffs) any and all of Assignor's right, title ownership and interest in and to all rights and entitlements, that Assignor has, may have had, or has asserted against third parties arising form or relating to the Claims." The Assignment describes "Claims" as those claims assigned by IMC to MSP. These assignments evidence Plaintiffs' standing to pursue the claims of FHCP and IMC.

Defendants argue Plaintiffs cannot show a valid assignment from MSP Recovery to Plaintiffs because they do not show and do not allege that IMC provided prior written approval of the subsequent assignment as required by the initial assignment from IMC to MSP Recovery.

Plaintiffs submit the declaration of Jessica Alcantara, manager of IMC from 2010 to 2017, wherein she declares that IMC was aware of the subsequent assignment from MSP to Plaintiffs of the IMC's right to recover and further declares that, " No prior written consent was needed to effectuate that subsequent assignment because it was ministerial in nature." The assignment from IMC to MSP Recovery required written consent of IMC to any subsequent assignment "unless the assignment is ministerial in nature." Given the undisputed evidence that the subsequent assignment from MSP Recovery to Plaintiffs was in fact ministerial in nature, the Court holds the assignment valid and enforceable.

**Summacare and Connecticare**

24

The parties dispute whether Summacare and Connecticare are MAOs, with Defendants contending they are downstream entities who contract with CMS and Plaintiffs contending they are indeed MAOs.  This presents a classic issue of fact that cannot be determined on a Motion to Dismiss.  Even though Defendants raise this argument as a standing issue, there is simply no evidence before the Court other than both parties' references to the CMS website's list of MAOs.  According to Defendants, Summacare and Connecticare are HMOs or HMOPOSs and neither are listed as MAOs, thus, they cannot bring a claim under the MSPA.  Plaintiffs respond that all the entities on the CMS list are MAOs and that CMS's reference to HMOs or HMOPOSs refers to the type of Plan offered by the MAOs.  Without more evidence the Court accepts Plaintiffs' allegation as true but may revisit this issue on Summary Judgment.

**Wrongly Identified Defendants**

Defendants next contend that Plaintiffs have asserted claims on behalf of four representative claimants against ten different Progressive Defendants without linking a particular representative Plaintiff's injury to a particular Defendant, thereby failing to state a claim.  Furthermore, Defendants contend that Defendant Progressive Corporation is a non-operating insurance holding company that does not write any insurance policies.  According to Defendants, The Progressive Group of Insurance Companies and Progressive Insurance Company are not legal entities and are not subject to lawsuit and Progressive Claims Management is unrelated to the remaining Defendants and there is no allegation this entity writes insurance policies.  These contentions are supported by the Declaration of Michael Uth, Deputy General Counsel providing legal services for The Progressive Group of

Insurance Companies.

Plaintiffs point the Court to exhibit lists where Defendants "admitted they were to provide primary payment on behalf of enrollees. (See Complaint Ex. B.). However, this does not provide competent evidence to contravene Defendants' Declaration that The Progressive Group of Insurance Companies and Progressive Insurance Company are not legal entities subject to suit. Therefore, the Court grants, in part, Defendants' Motion and dismisses Plaintiffs' claims against these Defendants.

The Court also grants Defendants' Motion with respect to the claims against Progressive Corporation based on Defendants' evidence that this Defendant does not write insurance policies and is therefore not a primary plan under the MSPA. Finally, Progressive Claims Management is not a Progressive entity associated with the Progressive Group of Insurance Companies and, in the absence of any allegation it writes insurance policies, the claims against it are dismissed as well.

As to Plaintiffs failure to tie a specific representatives claims to a specific Defendant, this presents a 12(b)(6) problem for Plaintiffs. Four representative Plaintiffs have not asserted sufficient facts demonstrating an injury-in-fact caused by ten different Defendants. Having dismissed out four Defendants, a problem for Plaintiffs still persists because of an absence of any allegations that a single representative Plaintiff was the beneficiary on multiple insurance plans by different insurers who subsequently failed to pay medical expenses owed under a primary plan. *See Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.,* 667 F.3d 669, 681 (6th Cir. 2011). "Appellants suggested at oral argument that the pleadings' generic references to the misconduct of "all Defendants" encompassed this theory of coverage

against Century, but we cannot accept such threadbare allegations as meeting the Federal Rules' notice-pleading standard."  Defendants cite the Court to *MAO-MSO Recovery II, LLC. v. Farmers Ins. Exch. Nos.* 2:17CV2522, 2:17CV2559, 2017 WL 5634097 (C.D. Cal. Nov. 20, 2017), wherein the California district court criticized Plaintiffs failure to link the claims of particular plaintiffs to particular defendants.  Although the California case did find problematic Plaintiffs failure to tie a specific Plaintiffs' injury to a specific Defendant, the Court dismissed the action without prejudice largely because Plaintiffs did not allege valid assignments.  That is not the case here where the Court has found valid assignments from MAO's to Plaintiffs.  Likewise, the Court finds Plaintiffs' Complaint alleges sufficient facts to support they suffered an injury-in-fact.   The California court held that "plaintiffs need only allege facts demonstrating that the MAOs incurred reimbursable costs and were not reimbursed."  *Id* at *7.  Here, Plaintiffs have done so by alleging "Despite Defendants' reporting that they were a primary payer, and corresponding admission that they should have paid for L.B.'s accident-related injuries, Defendants failed to do so, giving rise to a claim under the MSP Act.")  (Complaint at 12).   Because Plaintiffs have sufficiently alleged injury-in fact and have provided assignments sufficient to show standing, the Court does not find that dismissal is warranted for failing to tie a specific representative plaintiffs claim to a specific defendant without the opportunity to amend.   Therefore, the Court orders Plaintiffs to submit an Amended Complaint no later than October 11, 2019, linking each representative Plaintiffs' claims to a specific Defendant.  In the absence of a representative claim against a specific Defendant, that Defendant will be dismissed.

**Recovery when the Primary Plan was Never Presented with a Claim Prior to Suit**

27

Finally, Defendants claim Plaintiffs claims fail because they do not allege that the MAOs first made a claim to Defendants before they made a conditional payment.  Relying on § 1395y(b)(2)(B)(iii), Defendants allege that MAOs are prohibited from making a conditional payment until they first present the claims for payment to the primary payer.

Plaintiffs argue the law places no such presentment requirement but instead makes the right to recover automatic regardless of whether or not the MAO first made a claim to the primary plan.

Defendants rely primarily on § 1395y(b)(2)(B)(vi) for their presentment argument. This Court has already rejected Defendants' argument that this section presents a condition precedent to suit.   Furthermore, the Court's review of the above statute and the CFRs cited by Defendants reveal no requirement that Medicare or an MAO first present the claim to the primary plan.   An Oklahoma court held, "Medicare's reimbursement rights are automatic, and it is not required to give notice of its claim." *Porter v. Farmers Ins. Co.,* No. 10-CV-116-GKF-PJC, 2012 WL 256014, at *19 (N.D. Okla. Jan. 27, 2012), aff'd, 505 F. App'x 787 (10th Cir. 2012).  In the absence of any clear authority requiring an MAO first present its claim to the primary payer before suit, the Court holds Defendants arguments to the contrary are meritless.

Therefore, for the foregoing the Court grants in part and denies in part Defendants'
Motion to Dismiss.

IT IS SO ORDERED.

                               /s/Christopher A. Boyko
                               CHRISTOPHER A. BOYKO
                               United States District Judge